# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| GLAXOSMITHKLINE BIOLOGICALS SA AND GLAXOSMITHKLINE LLC, | |
| Plaintiffs, | C.A. No. 23-831-MN |
| v. | **DEMAND FOR JURY TRIAL** |
| PFIZER INC., | |
| Defendant. | |

**PROTOCOL FOR DISCOVERY,
INCLUDING DISCOVERY OF ELECTRONICALLY STORED INFORMATION
("ESI")**

1. **General Provisions**

    a. **Cooperation.** The parties agree to conduct discovery under Fed. R. Civ. P. 26-36 and on the parameters and/or timing of discovery as set forth below. Nothing in this ESI Protocol shall be construed to impose obligations on the parties not otherwise set forth in the Federal Rules of Civil Procedure.

    b. **Proportionality.** The parties agree to use reasonable, good faith and proportional efforts to preserve, identify and produce relevant information.[1] This includes identifying appropriate limits to discovery, including limits on custodians, identification of relevant subject matter, time periods for discovery and other parameters to limit and guide preservation and discovery issues.

---

[1] Information can originate in any form, including ESI and paper, and is not limited to information created or stored electronically.

    c.    **Preservation of Discoverable Information.** The parties agree to take reasonable and proportional steps to preserve discoverable information in the party's possession, custody or control.

    (i)    Absent a showing of good cause by the requesting party, the parties shall not be required to modify, on a going-forward basis, the procedures used by them in the ordinary course of business to back up and archive data; provided, however, that the parties shall preserve the non-duplicative discoverable information currently in their possession, custody or control.

    (ii)    Absent a showing of good cause by the requesting party, the categories of ESI identified in Schedule A attached hereto need not be preserved.

    d.    **Privilege**.

    (i)    The parties agree to provide a privilege log of documents, information, and things ("Documents") and ESI withheld in full from production on the basis of a claim of attorney-client privilege, work product protection, or any other assertion of privilege. The parties further agree to discuss the format of and deadlines for serving privilege logs within two weeks after the close of substantial production on October 31, 2024.

    (ii)    Without prejudice to any requesting party's right to request (and any producing party's right to object to such request) a more detailed log, producing parties need not provide a log of redacted portions of Documents and ESI that have been otherwise produced.

    (iii)    Except as otherwise specified in this protocol, privilege logs shall comply with Federal Rule 26(b)(5).

    (iv)    With respect to information generated after the filing of the complaint, parties are not required to include any such information in privilege logs.

      (v)    Activities undertaken in compliance with the duty to preserve information are protected from disclosure and discovery under Fed. R. Civ. P. 26(b)(3)(A) and (B).

      (vi)    Parties shall confer on an appropriate non-waiver order under Fed. R. Evid. 502. Until a non-waiver order is entered, information that contains privileged matter or attorney work product shall be immediately returned if such information appears on its face to have been inadvertently produced or if notice is provided within 30 days of inadvertent production.

2.    **Initial Disclosures.**  On April 4, 2024, each party shall disclose:

    a.    **Custodians.**  Up to 10 custodians most likely to have discoverable information in their possession, custody or control. The custodians shall be identified by name, title, role in the instant dispute, and the subject matter of the information.

    b.    **Non-custodial data sources.**[2]  A list of the non-custodial data sources that are most likely to contain non-duplicative discoverable information for preservation and production consideration, from the most likely to the least likely.

    c.    **Notice.**  The parties shall identify any issues relating to:

      (i)    Any ESI (by type, date, custodian, electronic system or other criteria) that a party asserts is not reasonably accessible under Fed. R. Civ. P. 26(b)(2)(C)(i).

      (ii)    Third-party discovery under Fed. R. Civ. P. 45 and otherwise, including the timing and sequencing of such discovery.

      (iii)    Production of information subject to privacy protections, including information that may need to be produced from outside of the United States and subject to foreign

---

[2]That is, a system or container that stores ESI, but over which an individual custodian does not organize, manage or maintain the ESI in the system or container (e.g., enterprise system or database).

laws. Lack of proper notice of such issues may result in a party losing the ability to pursue or to protect such information.

3. **Initial Discovery in Patent Litigation.**[3]

    a.    On April 12, 2024, and for defendant,[4] the plaintiffs shall specifically identify the accused products[5] and the asserted patent(s) they allegedly infringe, and produce the file history for each asserted patent.

    b.    On May 13, 2024, defendant shall produce to the plaintiffs sales figures for the accused product(s) and the core technical documents related to the accused product(s), including but not limited to operation manuals, product literature, schematics, and specifications.

    c.    On June 12, 2024, plaintiffs shall produce to defendant an initial claim chart relating each accused product to the asserted claims each product allegedly infringes.

    d.    On July 16, 2024, defendant shall produce to the plaintiff its initial invalidity contentions for each asserted claim, as well as the related invalidating references (e.g., publications, manuals and patents).

    e.    Absent a showing of good cause, follow-up discovery shall be limited to a term of 6 years before the filing of the complaint, except that discovery related to asserted prior art or the conception and reduction to practice of the inventions claimed in any patent-in-suit shall not be so limited.

---

[3] As these disclosures are "initial," each party shall be permitted to supplement.

[4] For ease of reference, "defendant" is used to identify the alleged infringer and "plaintiff(s)" to identify the patentee.

[5] For ease of reference, the word "product" encompasses accused methods and systems as well.

4. **Specific E-Discovery Issues.**

a. **On-site inspection of electronic media.** Such an inspection shall not be permitted absent a demonstration by the requesting party of specific need and good cause.

b. **Search methodology.** If the producing party elects to use search terms to locate potentially responsive ESI, it shall disclose the search terms to the requesting party. Absent a showing of good cause, a requesting party may request no more than 7 additional terms to be used in connection with the electronic search within 7 days of receipt of the producing party's disclosure of search terms. Focused terms, rather than over-broad terms (e.g., product and company names), shall be employed. The producing party shall search (i) the non-custodial data sources identified in accordance with paragraph 2(b); and (ii) emails and other ESI maintained by the custodians identified in accordance with paragraph 2(a).

c. **Format.** ESI and non-ESI shall be produced to the requesting party as text searchable image files (e.g., PDF or TIFF). When a text-searchable image file is produced, the producing party must preserve the integrity of the underlying ESI, i.e., the original formatting, the metadata (as noted below) and, where applicable, the revision history. The parties shall produce their information in the following format: single page TIFF images and associated multi-page text files containing extracted text or OCR with Concordance and Opticon load files containing all requisite information including relevant metadata.

d. **Native files.** The only files that should be produced in native format are files not easily converted to image format, such as Excel and Access files.

e. **Metadata fields.**  The parties are only obligated to provide the following metadata for all ESI produced, to the extent such metadata exists: Custodian, File Path, Email Subject, Conversation Index, From, To, CC, BCC, Date Sent, Time Sent, Date Received, Time Received, Filename, Author, Date Created, Date Modified, MD5 Hash, File Size, File Extension, Control Number Begin, Control Number End, Attachment Range, Attachment Begin, and Attachment End (or the equivalent thereof).

f. **Embedded files**.  OLE embedded objects (embedded MS Office files, etc.) shall be extracted as separate files and treated as attachments to the parent document where practicable. The parent-child relationships (i.e., the association between an attachment or embedded file and its parent document) must be preserved; however, non-relevant attachments, non-relevant embedded files, and embedded files containing only duplicative data and do not hit on the search terms run on the parent documents from which they were extracted may be excluded from production. All non-relevant or duplicative attachments excluded from production should be produced as a slipsheet or placeholder.  The receiving party may request a specific underlying attachment or embedded file if it has a good-faith basis for needing it, and the producing party will comply with reasonable requests.  Images embedded in emails shall not be produced as attachments unless they are responsive to a discovery request served upon the producing party, e.g., logos and junk files embedded in emails do not need to be produced as attachments.  The parties are not obligated to produce linked documents.

g. **Files produced in color.**  Powerpoint files shall be produced in color.

h. **Management and control.**  The producing party shall retain the presumptive right to manage and control review of its data files, including the right to use culling, searching, and advanced technology-assisted review tools.

| | |
|---|---|
| */s/ Sara M. Metzler* | */s/ Megan E. Dellinger* |
| Frederick L. Cottrell, III (#2555) | Jack B. Blumenfeld (#1014) |
| Kelly E. Farnan (#4395) | Megan E. Dellinger (#5739) |
| Sara M. Metzler (#6509) | MORRIS, NICHOLS, ARSHT & TUNNELL LLP |
| RICHARDS, LAYTON & FINGER, P.A. | 1201 North Market Street |
| One Rodney Square | P.O. Box 1347 |
| 920 N. King Street | Wilmington, DE 19801 |
| Wilmington, DE 19801 | (302) 658-9200 |
| (302) 651-7700 | jblumenfeld@morrisnichols.com |
| cottrell@rlf.com | mdellinger@morrisnichols.com |
| farnan@rlf.com | |
| metzler@rlf.com | *Attorneys for Defendant Pfizer Inc.* |

*Attorneys for Plaintiffs GlaxoSmithKline Biologicals SA and GlaxoSmithKline, LLC*

Dated:  April 10, 2024

SO ORDERED this 10th day of April 2024.

_____
The Honorable Maryellen Noreika
United States District Judge

## SCHEDULE A

1. Deleted, slack, fragmented, or other data only accessible by forensics.

2. Random access memory (RAM), temporary files, or other ephemeral data that are difficult to preserve without disabling the operating system.

3. On-line access data such as temporary internet files, history, cache, cookies, and the like.

4. Data in metadata fields that are frequently updated automatically, such as last- opened dates.

5. Back-up data that are substantially duplicative of data that are more accessible elsewhere.

6. Voice messages.

7. Instant messages that are not ordinarily printed or maintained in a server dedicated to instant messaging.

8. Electronic mail or pin-to-pin messages sent to or from mobile devices (e.g., iPhone and Blackberry devices), provided that a copy of such mail is routinely saved elsewhere.

9. Other electronic data stored on a mobile device, such as calendar or contact data or notes, provided that a copy of such information is routinely saved elsewhere.

10. Logs of calls made from mobile devices.

11. Server, system or network logs.

12. Electronic data temporarily stored by laboratory equipment or attached electronic equipment, provided that such data is not ordinarily preserved as part of a laboratory report. Data remaining from systems no longer in use that is unintelligible on the systems in use.